**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | |
|---|---|
| MGT GAMING, INC. | |
| Plaintiff, | |
| v. | Civil Action No 3:13-cv-692-CWR-FKB |
| WMS GAMING, INC., and MGM RESORTS INTERNATIONAL, INC. | |
| Defendants | |

# Plaintiff's Opposition to Defendant WMS's Motion to Stay

## TABLE OF CONTENTS

**Page**

Table of Authorities……………………………………….……………………………………ii

Table of Exhibits………………………………………………………………………………v

I.    FACTUAL BACKGROUND ................................................................................ 4

   A.   The Brandstetter Patents and Defendant's Willful Infringement................................ 4

   B.   WMS's  Pattern of Delay ................................................................. 5

II.   LEGAL STANDARD .......................................................................... 5

III.   ARGUMENT ................................................................................ 9

   A.   Defendants' motion to stay is premature because the PTO has not yet decided to institute *inter partes* review. ........................................................................ 10

   B.   Prejudice to the Non-Moving Party:  Plaintiff will be unduly prejudiced and tactically disadvantaged by a stay ........................................................ 11

      1.   Defendants' motion for stay is a dilatory tactic ...................................... 12

   C.   Simplification: The IPR proceedings are not likely to resolve all issues in this litigation ................................................................................ 16

   D.   This case is not in its early stages ................................................ 17

VI.   CONCLUSION ............................................................................ 19

# TABLE OF AUTHORITIES

Page

**Cases**

*ADA Solutions, Inc. v. Engineered Plastics, Inc.,* 826 F. Supp. 2d 348, 350 (D. Mass. 2011). ... 15

*Automatic Mfg. Sys. v. Primera Tech., Inc.,* No. 6:12-1727, 2013 U.S. Dist. LEXIS 67790, at *9 (M.D. Fla. May 13, 2013 ................................................................................................ 11

*Belden Techs. Inc. v. Superior Essex Communs. LP*, No. 08-63, 2010 U.S. Dist. LEXIS 90960, at *7–8 (D. Del. Sept. 2, 2010) .............................................................................................. 16

*Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 U.S. Dist. LEXIS 84533, at *20 (D. Del. June 17, 2013 ........................................................................................................................ 11

*eCOMSYSTEMS, Inc. v. Shared Mktg. Servs.*, No. 8:10-1531, 2011 U.S. Dist. LEXIS 10174, at *4 (M.D. Fla. Jan. 26, 2011) ........................................................................................... 11

*ESCO Corp. v. Berkeley Forge & Tool, Inc.*, No. 09-1635, 2009 U.S. Dist. LEXIS 94017 at *10–11 (N.D. Cal. Sept. 28, 2009) ............................................................................................ 17

*Everlight Elecs. Co. v. Nichia Corp.*, No. 12-11758, 2013 U.S. Dist. LEXIS 61666, at *31 (E.D. Mich. Apr. 30, 2013) ................................................................................................ 11

*Fresenius USA, Inc. v. Baxter Int'l., Inc.,* 582 F.3d 1288, 1305 (Fed. Cir. 2009) ...................... 10

*ImageVision.Net, Inc. v. Internet Payment Exch.*, Inc., No. 12-054, 2012 U.S. Dist. LEXIS 124979, at *15 (D. Del. Sept. 4, 2012); ................................................................................. 15

*Imagevision.net, Inc. v. Internet Payment Exchange, Inc.,* No. 12-054, 2013 U.S. Dist. LEXIS 25015, at *11 (D. Del. Feb. 25, 2013) .......................................................................... 21

*Innovative Office Prods. v. SpaceCo, Inc.*, No. 05-4037, 2008 U.S. Dist. LEXIS 67500, at *11–13 (E.D. Pa. Aug. 28, 2008) ( ......................................................................................... 17

*Interwoven, Inc. v. Vertical Computer Sys.,* No. 10-04645, 2012 U.S. Dist. LEXIS 30946, at *6 (N.D. Cal. Mar. 8, 2012) ............................................................................................... 16

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 2013 WL 6097571 at *1 (W.D. Tex. June 10, 2013). ................................................................................................... 12

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 2013 WL 6097571 at *2 (W.D. Tex. June 10, 2013); ................................................................................................... 14

ii

OCS-2263468

*Pentair Water Pool & Spa, Inc. v. Hayward Indus.*, No. 11-cv-459, 2012 U.S. Dist. LEXIS 178630, at *11 (E.D.N.C. Dec. 18, 2012) ............................................................... 16

*Semiconductor Energy Lab. Co. v. Chimes Innolux Corp.*, No. 12-21, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) ...................................................................................... 19

*Soverain Software LLC v. Amazon .Com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex.2005) .......... 11

*Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1130 (Fed. Cir. 1985).................................. 12

*Tokuyama Corp. v. Vision Dynamics, LLC,* No. 08-2781, 2008 U.S. Dist. LEXIS 84968, at *4–5 (N.D. Cal. Oct. 9, 2008). ...................................................................................... 15

*TruePosition, Inc., v. Polaris Wireless, Inc.*, 2013 WL 5701529 at *6 (D. Del. Oct. 21, 2013),. 17

*Ultratec, Inc. v Sorenson Communications, Inc.,* 2013 WL 6044407 at *4 (W.D. Wis. Nov. 14, 2013)............................................................................................................................. 15

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2013 WL 6044407 at *5 (W.D. Wis. Nov. 14, 2013); ......................................................................................................................... 14

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-00329, 2013 U.S. Dist. LEXIS 64154, at *9 (C.D. Cal. May 2, 2013) ........................................................... 11

*Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 2013 WL 1876459 at *2 (C.D. Cal. May 2, 2013). ............................................................................................... 13

*Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316,1328 (Fed.Cir.2001) ........................ 10

*Xilinx, Inc. v. Invention Inv. Fund I Lp*, No. 11-00671, 2012 U.S. Dist. LEXIS 170736, at *14–15 (N.D. Cal. Nov. 30, 2012) ............................................................................. 16

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-21, 2012 U.S. Dist. LEXIS 186322, at *3 (C.D. Cal. Dec. 19, 2012) .................................................... 11

**Statutes**

35 U.S.C. § 316(a)(11).................................................................................... 12

35 U.S.C. § 112............................................................................................... 21

35 U.S.C. § 314(b)........................................................................................... 12

35 U.S.C. § 311(b))........................................................................................... 6

37 C.F.R. § 42.107(b),..................................................................................... 12

37 C.F.R. §42.100(b) ...................................................................................... 18

OCS-2263468

**Table of Exhibits**

**Page**

Exh. A        U.S. Patent 7,892,088....................................................................................5

Exh. B        U.S. Patent 8,500,554....................................................................................5

Exh. C        First Amended Complaint for Patent Infringement ...................................5

Exh. D        Second Amended Complaint for Patent Infringement............................5

Exh. E        Declaration of Steven Brandstetter .......................................................3

OCS-2263468

The motion to stay filed by Defendant WMS Gaming, Inc. ("WMS") should be denied for multiple reasons.

First, the United States Patent and Trademark Office ("PTO") has not yet decided whether it will initiate Defendant's petition for *inter partes* review ("IPR") of Plaintiff MGT Gaming, Inc.'s ("MGT") first patent, USP No. 7,892,088 to Brandstetter ("the '088 patent").[1] Indeed, MGT hasn't yet had its opportunity to even respond to that petition.

Secondly, WMS hasn't filed any IPR against MGT's second patent, USP No. 8,500,554 to Brandstetter ("the '554 patent) which issued on August 6, 2013 and was the subject of MGT's September 1 Motion for Leave to File Second Amended Complaint, meaning that WMS's single IPR can't possibly resolve all the issues in this case under any scenario.

Thirdly, Defendant MGM Resorts International, Inc. ("MGM") has neither joined in WMS's IPR petition nor this motion; nor has it agreed to be bound by the IPR results, leaving all issues on the table in this case.

Finally, it has become increasingly clear that delay—not efficiency—is Defendant WMS's goal. WMS began its campaign of delay with its original flurry of procedural motions in January of this year, then waited and waited while those procedural motions delayed this case a full year after MGT filed this action before WMS filed its IPR petition on November 4, 2013 – the very last day it could do so under the applicable statute of limitations.[2] WMS's only excuse for its year-long delay was that it needed to first see MGT's infringement contentions. See WMS's Brief, (See WMS Exh. A), at 9-10. This is not true. As acknowledged in WMS's own

---

[1] "The Director may not authorize an *inter partes* review to be instituted unless the Director determines that the information presented in the petition … and any response … shows "that there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the claims challenged…". 35 U.S.C. §314.

[2] Any IPR petition must be filed within one year of the petitioning party being served with a complaint for patent infringement. 35 U.S.C. § 315(b).

IPR, "A claim subject to *inter partes* review is given its 'broadest reasonable construction in light of the specification of the patent in which it appears'," citing 37 C.F.R. §42.100(b).  WMS's IPR, at 9.  As WMS's  IPR further acknowledges, "The claim construction standard is different in District Court proceedings."  *Id.*, fn. 1.  In other words, it makes absolutely no difference what construction MGT put on its claims in this litigation or what devices WMS charges with infringement.  Moreover, WMS's IPR shows that it was fully aware that these events make absolutely no difference when it asserted this false excuse.

Moreover, all of the evidence submitted to the PTO in support of Defendants' IPR petition must be "prior art" (see 35 U.S.C. §311(b)) and therefore must have existed prior to the filing date of Plaintiff's patent, i.e., prior to October 18, 2001.  Obviously, the evidence relied on by WMS did not come into existence at any time since the filing of this lawsuit.  On the contrary, that evidence existed for over 12 years.  Nor was that evidence in any way difficult to locate.  Only issued patents were cited by WMS in its IPR.  In other words, all of WMS's  evidence was on file at the PTO for the past 12 years and has been readily discoverable online with a few keystrokes and a couple of clicks of the mouse for most, if not all, of those years.  Tellingly, WMS does even attempt to claim that this evidence was only recently discovered.

Not only was all of the cited evidence immediately available online at the PTO since well before this case was filed, but WMS had every motivation to identify and locate that readily accessible evidence from the moment Steve Brandstetter, the inventor of both MGT patents, provided WMS's  in-house counsel, Michael Blankstein, with the '088 patent on August 22, 2011, i.e., over 2 years ago.[3]  WMS's motivation ratcheted up another notch when it was served

---

[3]  See Steve Brandstetter Declaration (filed previously as Exh. 11 to Dkt. No. 38 and attached hereto as Exh. E) at ¶4.

with Plaintiff's Complaint on November 5, 2012.[4]  Yet, WMS waited until one day before the

statute of limitations expired to file its IPR at the PTO.  Despite these facts, WMS claims,

amazingly, that its IPR and Motion to Stay have been "timely filed" and that it has "acted

diligently."  WMS Brief at 2, 10.  WMS's actions are obviously neither "timely" nor "diligent"

by any stretch of imagination or logic.

WMS has essentially (and if the Court grants their motion, effectively) gamed the system

by stalling this case for the better part of a year with its initial motions, all the while holding its

planned IPR in its hip pocket.  If WMS was actually looking for an "efficient resolution" of the

validity issues presented in its IPR, it would have filed that IPR many months ago, rather than

waiting until the last possible moment in order to generate the maximum possible delay.  This

kind of gamesmanship should not be tolerated.

WMS's delay has prejudiced MGT – preventing it from enforcing its lawful patent rights

against WMS's  willful infringement.  This is not a static situation.  For over 2 years, after being

made aware of the '088 patent WMS continued to willfully and openly infringe and induce

others, e.g., MGM and Caesars, to infringe.  WMS's requested stay would only exacerbate the

prejudice that MGT has already suffered, and is continuing to suffer, as a result of WMS's willful

infringement.

Nor would a stay necessarily simplify the issues in this case.  First, MGM has not joined

in the IPR and has not agreed to be bound by it.  So, if WMS loses the IPR, MGM could simply

---

[4]  As shown by the Court's docket, Plaintiff's Complaint (asserting one patent, one count of
infringement, 4 patent claims) was filed on November 2, 2012 (Dkt. No. 1); WMS was promptly
served on November 5, 2012 (Dkt. No. 9); Plaintiff's First Amended Complaint (asserting the
same patent and same claims and virtually the same WMS games, i.e., Battleship, Pirate Battle,
and Clue) was filed and served on December 17, 2012 (Dkt. No. 19); WMS filed its Motion To
Sever, to Transfer, to Stay and to Dismiss on January 3, 2013 (Dkt. No. 22), but waited until
November 7, 2013 to file the instant motion (Dkt. No. 6).

OCS-2263468

re-litigate the validity of MGT's patent on the same or different grounds. Second, this case will not go away unless: (1) WMS's petition is "instituted" by the Patent Trial and Appeal Board ("PTAB") against every claim at issue, which won't be decided for 4-6 months; (2) the PTAB ultimately decides that all of the challenged claims are invalid; (3) WMS files a second IPR directed to Plaintiff's second patent; (4) that second IPR is both initiated and; (5) ultimately decided 100% in WMS's favor. If any claim of either MGT patent survives WMS's current or future IPRs, this case will go forward.

WMS's failure to even file an IPR against MGT's '554 patent indicates that either: (1) WMS does not have any effective prior art defense to that patent; or (2) that WMS simply wants to delay this process for as long as possible. There is absolutely nothing preventing WMS from immediately filing a second IPR against the '554 patent now, concurrently with the '088 IPR, or even before that IPR was filed – if it has any meritorious defenses and actually wants to resolve the prior art validity issues in this case in a timely and efficient fashion.

For any one of these reasons the Court should deny WMS's motion and allow this case to proceed. MGT's day in court has been delayed long enough; it is time for WMS to face the consequences of its ongoing willful infringement.

## I.    FACTUAL BACKGROUND

### A.    The Brandstetter Patents and Defendant's Willful Infringement

Plaintiff MGT is the sole assignee and owner of the Brandstetter '088 and '554 patents. Both patents cover "a gaming device having a second separate bonus event" which is played on an overhead display. See Exs. A and B. Since the '554 patent is a continuation of the '088 patent, it relies on exactly the same specification and drawings. See 35 U.S.C. §120. The '554 patent claims are also very similar to those of the '088 patent. See Exhs. A and B.

4

WMS has been aware of the '088 patent since at least August 2011, yet continues to sell slot machine gaming systems that directly infringe both patents. WMS also induces infringement by others, e.g., MGM, via recommendations and instructions on how to infringe the '088 and '554 patents. (Compl. ¶¶ 23–31, Second Amended Complaint ¶¶ 19-22. See Dkt. Nos. 1, 63). For example, WMS promotes products called Pirate Battle, Battleship, and Clue, each of which infringes the '088 and '554 patents, and instructs casinos, including MGM, in their use. See Complaint (Exh. C) and Second Amended Complaint (Exh. D.)[5]

WMS has also given marketing presentations at industry trade shows inducing potential customers to infringe MGT's patents, by demonstrating the accused games in both Mississippi and Las Vegas, soliciting attendees to inspect, play and to lease or purchase the infringing games. See First Amended Complaint for Patent Infringement (Exh. C).

### B.  WMS's Pattern of Delay

In the year since MGT filed this lawsuit, WMS has consistently sought delay, first seeking and receiving an extension of time to Answer, then waiting until January 3, 2013 to respond to MGT's First Amended Complaint by filing motions to sever, to transfer, to stay, and to dismiss, which motions were not decided for almost 10 months, i.e., on October 23, 2013. At no point during the year between service of MGT's Complaint on WMS on November 5, 2012, and WMS's filing of its IPR on November 4, 2013 did WMS bring its intention to file an IPR to the attention of this court. Instead, it held that IPR close to its vest, waiting to file it and its motion to stay when they could create the greatest disruption and delay.

## II.  LEGAL STANDARD

---

[5]  All exhibits cited herein are authenticated in the Declaration of Michael E. Crawford filed herewith, unless otherwise noted.

OCS-2263468

Because the new *inter partes* review procedure under the America Invents Act ("AIA") has only been available since September 16, 2012, guidance is often derived from prior cases dealing with the predecessor reexamination procedures. Those cases hold that:

"It is established that a "court is not required to stay judicial resolution in view of reexaminations." *Fresenius USA, Inc. v. Baxter Int'l., Inc.,* 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman, concurring), citing *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316,1328 (Fed.Cir.2001).[6]

"There is no per se rule requiring that patent cases be stayed pending reexaminations because such a rule 'would invite parties to unilaterally derail' litigation." *Soverain Software LLC v. Amazon .Com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex.2005), quoted in *eCOMSYSTEMS, Inc. v. Shared Mktg. Servs.*, No. 8:10-1531, 2011 U.S. Dist. LEXIS 10174, at *4 (M.D. Fla. Jan. 26, 2011).

"[A] district court has broad discretion to grant or deny a stay pending reexamination of the patents-in-suit, and 'is under no obligation to delay its own proceedings by yielding to ongoing [PTO] patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze.'" *eCOMSYSTEMS*, at *4. "In exercising its discretion to deny or grant a stay pending reexamination, a district court should consider the effect of delay upon a patentee." *Fresenius.*, at 1305, n.1.

Nor is there an "enhanced" preference for stays in view of the AIA's replacement of the prior *inter partes* reexamination with the AIA *inter partes* review, as suggested by WMS. (*See* WMS Br. at 6–7.)[4]  On the contrary, while the PTO procedure has changed somewhat, courts

---

[6]  *See* also *Alps South, LLC v. Ohio Willow Wood Co.,* No. 8:09-00386, 2010 U.S. Dist. LEXIS 144260 (M.D. Fla. June 16, 2010) (denying stay, explaining that "a district court is not required to stay judicial resolution merely because reexamination proceedings have been instituted").

6

continue to apply the same standard to stays. See, *e.g. Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-21, 2012 U.S. Dist. LEXIS 186322, at *3 (C.D. Cal. Dec. 19, 2012) ("The Court sees no reason why the three factor assessment would not still be relevant.")

Indeed, courts continue to deny stays notwithstanding the new IPR procedure. See, *e.g. Automatic Mfg. Sys. v. Primera Tech., Inc.,* No. 6:12-1727, 2013 U.S. Dist. LEXIS 67790, at *9 (M.D. Fla. May 13, 2013) (denying stay); *see also Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 U.S. Dist. LEXIS 84533, at *20 (D. Del. June 17, 2013) (denying stay); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-00329, 2013 U.S. Dist. LEXIS 64154, at *9 (C.D. Cal. May 2, 2013) (denying stay); *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-11758, 2013 U.S. Dist. LEXIS 61666, at *31 (E.D. Mich. Apr. 30, 2013) (denying stay).

Nor is the new IPR procedure as streamlined as WMS seems to suggest. While the IPR must be completed within 12 to 18 months <u>once an IPR petition has been granted</u>, it can take six months for the PTO to decide whether to grant the petition.[7] In other words, the time frame for completion of the process can be as long as ***two years*** from the date the petition is filed. As explained by a recent decision of the Western District of Texas:

> [The respondent] has three months, from the date of the PTAB petition, to file a response, 37 C.F.R. § 42.107(b), and the PTAB in turn has three months after that to determine whether an inter partes review will proceed, 35 U.S.C. § 314(b). In other words, it will likely be five months before the Court or the parties even know if an inter partes review will actually occur here. If the PTAB grants review, by statute it must render a final determination within one year. Id. § 316(a)(11). The one-year period can be extended for a further six months upon a showing of good cause. Id. As such, there is a possibility the entire inter partes review process would take nearly two years.

---

[7] After a petition is filed, the patent owner has three months to file a preliminary response opposing the request. 35 U.S.C. § 313; 37 C.F.R. § 42.107(b). The PTO then has another three months to decide whether to initiate the review. *See* 35 U.S.C. § 314(b).

OCS-2263468

*National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 2013 WL 6097571 at *1 (W.D. Tex. June 10, 2013).

Further, it is not the case that the validity issues in this case are "best addressed by the PTO's administrative law judges." See, *e.g. Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1130 (Fed. Cir. 1985) ("There is no peculiar cachet which removes 'technical' subject matter from the competency of a jury when competent counsel have carefully marshaled and presented the evidence of that subject matter and a competent judge has supplied carefully prepared instructions.") This is particularly true where, as here, the patents involve only the configuration of slot machines with an overhead display on which a certain type of game is played. In colloquial terms, "this is not rocket science."

There are no cut-and-dried rules concerning whether a Court should grant a motion to stay pending IPR proceedings; rather, "[a]stay pending an administrative [PTO] proceeding . . . must be based upon the circumstances of the individual case before the court." *Automatic Mfg. Systems*, 2013 U.S. Dist. LEXIS 67790 at *3. <u>The moving party bears the burden of showing why a stay should be granted</u>. *Id*. Courts consider three factors in deciding whether a stay is warranted: (1) whether the stay would unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) the extent to which discovery has progressed and whether a trial date has been set. *Id.* at *3–4. These factors have been specifically applied to *inter partes* proceedings by several courts. See, e.g., *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, 2013 WL 1876459 at *2 (C.D. Cal. May 2, 2013). ("The Court sees no reason why the three factor assessment would not still be relevant [to the new *inter partes* review proceeding].")

8

OCS-2263468

However, the Court is not limited to these three factors – "the totality of the circumstances governs." *Automatic,* at *4. Here, WMS's intentionally dilatory tactics must also be factored in as part of the calculus of this Court's inherent discretion to control its docket and the litigants before it. See *Belden Techs. Inc. v Superior Essex Communications LP,* U.S. Dist LEXIS 90960 at *7-8 (D. Del. Sept. 2, 2010); *Pentair Water Pool & Spa, Inc. v. Hayward Indus.*, No. 11-cv-459, 2012 U.S. Dist. LEXIS 178630, at *11 (E.D.N.C. Dec. 18, 2012).

## III.    ARGUMENT

The facts of this case dictate that the Court deny WMS's requested stay because the motion is: (A) premature; (B) it will prejudice MGT in the form of <u>further</u> undue delay; (C) it would not necessarily serve to simplify the case; (D) it would reward WMS's obvious gamesmanship; and (E) it would put a hold on a case that is already well underway (and would be even further along if WMS had not done its utmost to delay the litigation).

9

A.     **Defendants' motion to stay is premature because the PTO has not yet decided to institute *inter partes* review.**

The instant case is on all fours with a recent case – *Automatic Mfg. Systems*, 2013 U.S. Dist. LEXIS 67790 (M.D. Fla. May 13, 2013). In that case, the defendant moved for a stay upon filing an IPR petition but before the PTO had decided whether to grant the petition. *Id.* at *4, 7. The Court denied the motion for stay. First, the court noted that a petition can be pending for up to six months before the PTO even makes an initial decision of whether to institute the review, leaving the case "languishing" in a six-month "limbo." *Id.* at *7. Second, even if the PTO were to institute review, the scope of such review can be very limited, i.e., only directed to certain patent claims. *Id.* at *8. As a result of these considerations, the *Automatic* court found that a stay would be highly prejudicial to the plaintiff—"[t]he patent owner should be able, if it desires, to prosecute its claims, to take discovery, and to set its litigation positions, at least until such time as the USPTO takes an interest in reviewing the challenged claims." *Id.* at *9. The facts of this case are the same and WMS has cited nothing to the contrary.[8]

Other courts have similarly denied stays where the PTO has not yet decided whether to grant the requested patent review. *E.g., National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 2013 WL 6097571 at *2 (W.D. Tex. June 10, 2013); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2013 WL 6044407 at *5 (W.D. Wis. Nov. 14, 2013); *ImageVision.Net, Inc. v. Internet Payment Exch.*, Inc., No. 12-054, 2012 U.S. Dist. LEXIS 124979, at *15 (D. Del. Sept.

---

[8]  The cases cited for the proposition that the Court should stay this case *before* the PTO has decided whether to institute the review are unavailing. (*See* Br. at 10.) The cases relied on by WMS were situations where the district court litigation was still at its very early stages, *e.g.*, *ASCII Corp. v. STD Entertainment USA*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("the parties are in the initial stages of the lawsuit and have undertaken little or no discovery … the case has not been set for trial."). Here, the district court case has been ongoing for over a year, deadlines have been set and discovery has occurred.

10

OCS-2263468

4, 2012); *Tokuyama Corp. v. Vision Dynamics, LLC,* No. 08-2781, 2008 U.S. Dist. LEXIS 84968, at *4–5 (N.D. Cal. Oct. 9, 2008).

Reducing needless delay was one of the motivating factors for creation of the new IPR procedure, and the requirement of forcing defendants to choose one forum or another at the outset serves that goal. *See* 77 Fed. Reg. 48,680 (Aug. 14, 2012). WMS's gamesmanship in delaying its IPR for a full year after being served and two years since being advised of the '088 patent, does not serve that goal. Because the PTO has not yet decided whether to grant a stay and its decision on the issue may be five months away, the Court should deny the motion as premature. That decision is particularly warranted here, where WMS's IPR petitions were filed at the last possible moment.

### B. Prejudice to the Non-Moving Party: Plaintiff will be unduly prejudiced and tactically disadvantaged by a stay

"[A]rguably [the] most important factor is whether and to what extent a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *ADA Solutions, Inc. v. Engineered Plastics, Inc.,* 826 F. Supp. 2d 348, 350 (D. Mass. 2011). "The moving party bears the burden of showing that the non-moving party will not be prejudiced by a stay." *Id.; Ultratec, Inc. v Sorenson Communications, Inc.,* 2013 WL 6044407 at *4 (W.D. Wis. Nov. 14, 2013). WMS has failed to do so. Granting a stay would prejudice MGT by rewarding and sanctioning WMS's transparent dilatory tactics. It would also prejudice MGT's ability to enforce their patent rights against a party that continues to willfully infringe after being put on notice of MGT's patent more than two years ago. Under these circumstances, a stay is inappropriate.

11

### 1. Defendants' motion for stay is a dilatory tactic

WMS contends that it "timely petitioned for *inter partes* review and moved for a stay." (WMS Br. at 9.) The facts of this case tell a different story. As observed by the court in *Belden Techs. Inc. v. Superior Essex Communs. LP*, No. 08-63, 2010 U.S. Dist. LEXIS 90960, at *7–8 (D. Del. Sept. 2, 2010) (denying stay): "[a] request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage." In another case, *Alps South, LLC v Ohio Willow Wood Co.*, 2010 U.S. Dist. LEXIS 144260, at *4–5 (M.D. Fla. June 16, 2010), the Court found prejudice to the plaintiff and denied a stay because the defendant "did not file a reexamination request until nearly <u>nine months</u> after the case was filed, although it had all necessary information at the commencement of the case." That is precisely the situation here where it has been over a year since the initiation of litigation and over two years since WMS was provided with notice of the '088 patent. WMS filing of its IPR petition at this late date is much more egregious than in the *Belden* case.

Other courts have similarly denied stays where it appears that the party seeking the stay is doing so for tactical reasons. *Pentair Water Pool & Spa, Inc. v. Hayward Indus.*, No. 11-cv-459, 2012 U.S. Dist. LEXIS 178630, at *11 (E.D.N.C. Dec. 18, 2012) (denying stay where defendant waited until <u>ten months</u> into the litigation to request a reexamination); *Xilinx, Inc. v. Invention Inv. Fund I Lp*, No. 11-00671, 2012 U.S. Dist. LEXIS 170736, at *14–15 (N.D. Cal. Nov. 30, 2012) (denying stay where stay request was made <u>over a year</u> into litigation); *Interwoven, Inc. v. Vertical Computer Sys.*, No. 10-04645, 2012 U.S. Dist. LEXIS 30946, at *6 (N.D. Cal. Mar. 8, 2012) (denying stay, finding the motion to stay to be "<u>simply a delaying strategy</u>" and noting that the party seeking the stay did so only after receiving an unfavorable claim construction ruling);

12

*ESCO Corp. v. Berkeley Forge & Tool, Inc.*, No. 09-1635, 2009 U.S. Dist. LEXIS 94017 at *10–

11 (N.D. Cal. Sept. 28, 2009) (denying stay because defendant was attempting to use

reexamination to gain a tactical advantage in litigation by <u>making no effort to seek reexamination</u>

<u>for 11 months</u> after learning of Plaintiff's infringement accusations and ignoring discovery

requirements without seeking relief from the Court); *Innovative Office Prods. v. SpaceCo, Inc.*,

No. 05-4037, 2008 U.S. Dist. LEXIS 67500, at *11–13 (E.D. Pa. Aug. 28, 2008) (denying a

motion to stay because the stay was a dilatory tactic which prejudices the plaintiff by allowing

the defendant to continue to infringe).  As another court explained:

> The more diligent a party is in seeking inter parties review, the less
> likely its petition is prejudicial to the non-movant.  Courts in this
> jurisdiction have held that delays of a few months in filing for inter
> parties review may not be prejudicial nor designed to gain a tactical
> advantage.  <u>Filings for IPR made well after the initiation of litigation,</u>
> <u>however, may suggest an unfair tactical advantage or dilatory motive.</u>
> <u>In the instant matter, defendant waited until the end of the statutory</u>
> <u>deadline to file its IPR</u>, close to the eve of claim construction briefing,
> and after substantial document discovery was conducted.  <u>Although</u>
> <u>defendant's request was filed within the statutory window, this does</u>
> <u>not render its request for a stay immune from denial.</u>

*TruePosition, Inc., v. Polaris Wireless, Inc.*, 2013 WL 5701529 at *6 (D. Del. Oct. 21, 2013),

report and recommendation adopted, 2013 WL 6020798 (D. Del. Nov. 12, 2013).

Here, the record shows clearly dilatory tactics by WMS.  WMS has failed to adequately

explain (its only "excuse" being clearly non-meritorious) why it waited over two years from

being advised of MGT's patent and almost a full year after the initiation of this litigation to file

its IPR petition.  As in *Alps South*, WMS has obviously had all of the necessary information in its

possession for a very long time -- all of the evidence cited in the IPR has been readily available

online for many years.  The only reasonable inference is that WMS delayed for tactical reasons.

13

The fact that WMS filed its IPR petition on November 4, 2013 is no coincidence—that was the last possible day to file under the IPR statute of limitations. *See* 35 U.S.C. 315(b). Section 315(b) gives a petitioner one year from the date it is served with a complaint for patent infringement to petition for *inter partes* review. WMS was served with the complaint in this case on November 5, 2012—exactly 364 days before WMS filed its IPR petition. As another court has explained, the fact that Section 314(b) allows one year "does not change the fact that delay in seeking the PTO's review of a patent within that year can adversely affect a district court's view of a request for a stay pending review." *Universal Elecs.*, 2013 U.S. Dist. LEXIS 64154, at *5. Again, the only reasonable inference is that WMS deliberately waited out the statute of limitations to the very last day to obtain maximum possible delay.

As previously noted, WMS's only rebuttal, that it needed to wait for MGT's infringement contentions, is nonsense. As acknowledged in WMS's own IPR, "The claim construction standard [in an IPR] is different than in District Court proceedings…" (IPR, at 9. See WMS's Exh. A). As further acknowledged in WMS IPR, it based its claim construction in the IPR on the requirements of 37 C.F.R. §42.100(b), i.e., the "broadest reasonable construction in light of this specification …". *Id*. That required construction has absolutely nothing to do with MGT's infringement contentions in this case. WMS is clearly speaking out of both sides of its mouth. Further evidencing WMS's lack of candor in this regard is the fact that it never once referenced MGT's infringement contentions in its 57-page IPR.

Further, since this case involves both direct and indirect infringement, the latter of which requires proof of direct infringement by the casinos or end users of WMS's products as well as specific intent to infringe, proving all of MGT's damages may prove to be far more difficult than in a typical case of direct infringement. This renders the need for a speedy resolution even more

OCS-2263468

paramount, because a party could potentially argue that an accused indirect infringer with an erroneous belief of non-infringement should not be liable for *induced* infringement. Under this scenario, an earlier judgment would eliminate any alleged good faith belief of non- infringement, i.e., post-judgment sales of accused products could no longer be made under this alleged good faith belief and would give rise to damages. A stay would result in a belated judgment of infringement, thus permitting WMS to insulate itself from a portion of the damages for a longer period of time based on its alleged good faith, but erroneous, belief of non-infringement. There could be no better illustration of irreparable harm than infringement for which MGT cannot recover damages because of a delayed judgment. Clearly, any further delay in the resolution of this action poses irreparable harm and undue prejudice to MGT.

WMS's  principal case allegedly excusing its obvious delays is totally inapposite. *Semiconductor Energy Lab. Co. v. Chimes Innolux Corp.*, No. 12-21, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012), involved claims for infringement of six patents containing 288 patent claims and a Complaint which did not identify which claims were at issue, thus requiring the defendant to wait until the plaintiff filed its infringement contentions before it could intelligently draft its three IPR Petitions. Moreover, when the plaintiff filed its infringement contentions, they still included 100 claims, from all six patents, with claim charts and exhibits totaling more than 35,000 pages. "In light of these facts" (*Id.*) the court in *Semiconductor* not surprisingly agreed that it was necessary for the defendant to wait until the plaintiff filed its infringement contentions before filing its multiple IPRs. These facts could not be more different from the instant situation. At the time WMS filed its single IPR, MGT's pleading asserted one single patent with a grand

15

total of <u>six (6) patent claims only four (4) of which were asserted</u> in MGT's pleadings.[9]  These facts did not change one iota when MGT filed its infringement contentions.

MGT's proposed Second Amended Complaint, which has yet to be accepted for filing, involves the same four claims of the '088 patent and the same five WMS games, plus one additional patent, the '554 patent, and one additional game.  Most significantly, however, the '554 patent has absolutely nothing to do with WMS's IPR, which does not address that patent, or its timing.

Each additional day of WMS's infringement, particularly its potentially uncompensable indirect infringement, causes more irreparable harm to Plaintiffs.  This prejudice and WMS's dilatory tactics weigh strongly against a stay.

C.      **Simplification: The IPR proceedings are not likely to resolve all issues in this litigation**

WMS contends that a stay will greatly simplify the issues in question.  But "to truly simplify the issues . . . the outcome of the reexamination must finally resolve all issues in the litigation." *Alps South,* 2010 U.S. Dist. LEXIS 144260, at *5 (citations omitted).

Here, MGM has not joined in the IPR, has not joined in this motion, and has not agreed to be bound by the IPR.  Hence, any resolution that does not resolve every single claim in WMS's favor will leave MGM free to reassert any and all challenges to those claims in this lawsuit.  Secondly, and equally important, WMS has chosen not to even file an IPR against the '554 patent.

---

[9]  Although MGT's pleading refer to "at least claims 1-3 and 6" as being at issue, the other two claims, both of which required a "wheel" or "Ferris wheel"  to be part of any accused game, were obviously inapplicable unless WMS, unbeknownst to MGT, but obviously known to WMS had games that involved a "wheel" or "Ferris wheel."

16

The fact that the PTO has not yet decided whether to institute the WMS's requested IPR, "makes it more difficult to predict whether the issues are likely to be simplified." *Universal Elecs.*, 2013 U.S. Dist. LEXIS 64154, at *13.  For example, the PTO "may choose to limit its review to a few claims challenged in the petition or to certain grounds asserted by the petitioner [or] it may also choose not to proceed at all. . . ."  *Automatic*, 2013 U.S. Dist. LEXIS 67790, at *6–8.

In addition, IPRs are limited to validity arguments based on either anticipation or obviousness under 35 U.S.C. §§ 102 and 103, respectively.  35 U.S.C. § 311(b). Thus, the IPRs would leave many issues unresolved, including (i) infringement, and (ii) any enablement and/or written description defenses the defendants may assert under 35 U.S.C. § 112.

### D.      This case is not in its early stages

Merely claiming that the stage of the case is early "is not sufficient grounds to support a stay."  *Imagevision.net, Inc. v. Internet Payment Exchange, Inc.,* No. 12-054, 2013 U.S. Dist. LEXIS 25015, at *11 (D. Del. Feb. 25, 2013).  Moreover, as a factual matter, this case is not "in its earliest stages."  MGT filed this action over a year ago.  The parties have been litigating in multiple respects, including disposition of all of WMS's  early motions.  A Scheduling Order has been entered, a *Markman* hearing and a trial date have been set, and the parties have commenced discovery, including the service of a substantial number of interrogatories and document requests, to which WMS has responded, albeit stonewalling with respect to any substantive responses.[10]  Both parties have also served their infringement, non-infringement, and invalidity

---

[10]  A telephone Case Management Conference was held before Magistrate Judge Ball, on May 9, 2013, pursuant to which the parties, including WMS, negotiated a Case Management Report (without a word from WMS as to its IPR plans) agreed to various deadlines, including:  initial disclosures under Rule 26(a)(1) (June 21, 2013); disclosure of infringement contentions (August 30, 2013) and disclosure of non-infringement and invalidity contentions (Oct. 25, 2013).

OCS-2263468

contentions, which has also substantially advanced this case. Defendants' repetitive and dilatory motions are the only reasons this case isn't even further advanced.

Courts frequently deny stays in cases at similar stages in litigation, and in even earlier stages. For example, in *Imagevision.net, Inc.*, the defendant filed a petition for reexamination <u>six months after being sued</u> for infringement. 2013 U.S. Dist. LEXIS 25015, at *1. By that point, "discovery [was] ongoing, a scheduling order [had] been issued, with cut off dates for discovery, including expert discovery, and the Markman process and letter briefs on case dispositive motions loom[ed] in the near future." *Id.* at *11. The court denied the stay, noting that substantial litigation had already occurred, in contrast with cases where "no discovery had been conducted and no scheduling order issued." *Id.* at *12. In this case, a Case Management Order has been in place since May 21, 2013; all parties have filed initial and even supplemental disclosures, MGT and WMS have both served discovery requests, both written and via deposition notices and subpoenas, and the parties have served infringement, non-infringement and invalidity contentions.[11] Also of critical significance are Judge Reeves' October 23 Opinion

---

On May 21, 2013 the Court issued its Case Management and Scheduling Order, setting a discovery deadline of February 2, 2014, *Markman* claim construction hearing on June 5, 2014, and trial for October 6, 2014. (Dkt. No. 44, ¶ 5.) Thereafter, WMS issued deposition and document subpoenas to Brandstetter and his co-inventor, Jim Devlin (Dkt. No. 62); MGT served its infringement contentions on WMS on Aug. 30, 2013, and filed its Motion for Leave to file a Second Amended Complaint (to assert the recently issued '554 patent) (Dkt. No. 63); Defendants Penn and Aruze filed supplemental disclosures (Dkt. Nos. 64, 65); and MGT served formal discovery requests including interrogatories and document requests and deposition subpoenas on WMS on Oct. 8, 2013; WMS responded (albeit without a single substantive answer or document) on November 12, 2013.

[11] Nevertheless, Magistrate Judge Ball held a telephone Case Management Conference on May 9, 2013, pursuant to which the parties, including WMS, negotiated a Case Management Report (without a word from WMS as to its IPR plans) agreed to various deadlines, including: initial disclosures under Rule 26(a)(1) (June 21, 2013); disclosure of infringement contention (August 30, 2013) and disclosure of non-infringement and invalidity contentions (Oct. 25, 2013). On May 21, 2013 the Court issued its Case Management and Scheduling Order, setting a discovery

OCS-2263468

and Order and his follow-up Order Regarding Severed Claims which orders provided the guidance needed by the parties on when, where and how they would be litigating the cases at issue. The cases are now in order to proceed at full speed.

The fact that MGT had previously asserted, on September 6, 2013 that the case had not proceeded too far to permit an amendment to the pleadings is irrelevant to the present issue because that was prior to the service of the parties' supplemental disclosures, prior to MGT's interrogatories and document requests, prior to WMS responses thereto, prior to MGT's Rule 30(b)(6) deposition notices, prior to the service of any invalidity and non-infringement contentions, prior to WMS's service of its Answer to MGT's First Amended Complaint and Counterclaims, and, perhaps most importantly, prior to any of the aforementioned orders by Judge Reeves disposing of all of MGT's initial motions. Much has happened in the last several months.

Just as in *Imagevision.net*, the fact that substantial litigation has already occurred in this case weighs against granting a stay. WMS's dilatory tactics also weigh heavily against a stay. Moreover, any economy that may be gained in the hypothetical event that the PTO agrees to reexamine some or all of the claims of the Brandstetter '088 patent and at some later point could invalidate some of those claims is offset by the substantial resources already invested in this litigation, the fact that MGM has not joined in the IPR or motion, and the fact that no IPR has even been filed against the '554 Brandstetter patent.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny WMS's motion to stay.

Plaintiffs MGT Gaming, Inc.

---

deadline of February 2, 2014, *Markman* claim construction hearing on June 5, 2014, and trial for October 6, 2014. (Dkt. No. 44, ¶ 5.)

OCS-2263468

By their attorneys,

November 25, 2013

/s/ *Erin Saltaformaggio*
Erin Saltaformaggio (MBN 103999)
esaltaformaggio@babc.com
David W. Clark (MBN 6112)
dclark@babc.com
BRADLEY Arant BOULT CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 400
Jackson, Mississippi 39201
Telephone: 601-948-8000
Facsimile: 601-948-3000

Robert A. Rowan (*pro hac vice*)
Joseph S. Presta (*pro hac vice*)
Chris Comuntzis (*pro hac vice*)
Michael E. Crawford (*pro hac vice*)
NIXON & Vanderhye P.C.
901 North Glebe Road
Arlington, Virginia 22203
Telephone: 703-816-4000
Facsimile: 703-816-4100

*Attorneys for* Plaintiff *MGT Gaming, Inc.*

20

OCS-2263468

**Certificate of Service**

       I certify that on November 25, 2013 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

                    _/s/ *Erin Saltaformaggio*_____

                    Erin Saltaformaggio (MBN 103999)
                    esaltaformaggio@babc.com
                    BRADLEY ARANT BOULT CUMMINGS LLP
                    One Jackson Place
                    188 East Capitol Street, Suite 400
                    Jackson, Mississippi 39201
                    Telephone: 601-948-8000
                    Facsimile:  601-948-3000

OCS-2263468